**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

ROBERT RODRIGUEZ,                    ) Case No. CV 13-2630-JPR
                                     )
                  Plaintiff,         )
                                     )
            vs.                      ) **MEMORANDUM OPINION AND ORDER**
                                     ) **AFFIRMING COMMISSIONER**
CAROLYN W. COLVIN, Acting            )
Commissioner of Social               )
Security,                            )
                                     )
                  Defendant.         )
_____     )

**I.    PROCEEDINGS**

     Plaintiff seeks review of the Commissioner's final decision
denying his application for Social Security Disability Insurance
benefits ("DIB").  The parties consented to the jurisdiction of
the undersigned U.S. Magistrate Judge under 28 U.S.C. § 636(c).
This matter is before the Court on the parties' Joint
Stipulation, filed February 6, 2014, which the Court has taken
under submission without oral argument.  For the reasons stated
below, the Commissioner's decision is affirmed and this action is
dismissed.

1

## II.   BACKGROUND

Plaintiff was born on January 29, 1963, and has a high-school education.  (Administrative Record ("AR") 125, 149-50.)  He previously worked as an electrician.  (AR 149-50.)

Plaintiff filed an application for DIB on February 26, 2010.  (AR 125.)  He alleged that he had been unable to work since February 27, 2009, because of severe depression with psychotic features and severe anxiety.  (AR 125, 181.)  After his application was denied initially and upon reconsideration, he requested a hearing before an ALJ.  (AR 72-73.)  The ALJ continued the initial March 30, 2011 hearing to permit Plaintiff to retain counsel.  (AR 37-43.)  A second hearing was held on June 30, 2011, at which Plaintiff, who was then represented by counsel, appeared and testified.  (AR 44-65.)  A vocational expert ("VE") responded to written interrogatories by the ALJ, and those responses were entered into the record.  (AR 20, 219-22.)  In a written decision issued February 14, 2012, the ALJ determined that Plaintiff was not disabled.  (AR 17-34.)  On March 14, 2012, the Appeals Council denied his request for review.  (AR 1-6.)  This action followed.

## III. STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits.  The ALJ's findings and decision should be upheld if they are free of legal error and supported by substantial evidence based on the record as a whole.  Id.; Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971); Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007).  Substantial evidence means such evidence as a

reasonable person might accept as adequate to support a conclusion.  <u>Richardson</u>, 402 U.S. at 401; <u>Lingenfelter v. Astrue</u>, 504 F.3d 1028, 1035 (9th Cir. 2007).  It is more than a scintilla but less than a preponderance.  <u>Lingenfelter</u>, 504 F.3d at 1035 (citing <u>Robbins v. Soc. Sec. Admin.</u>, 466 F.3d 880, 882 (9th Cir. 2006)).  To determine whether substantial evidence supports a finding, the reviewing court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion."  <u>Reddick v. Chater</u>, 157 F.3d 715, 720 (9th Cir. 1996).  "If the evidence can reasonably support either affirming or reversing," the reviewing court "may not substitute its judgment" for that of the Commissioner.  <u>Id.</u> at 720-21.

**IV.  THE EVALUATION OF DISABILITY**

People are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted, or is expected to last, for a continuous period of at least 12 months.  42 U.S.C. § 423(d)(1)(A); <u>Drouin v. Sullivan</u>, 966 F.2d 1255, 1257 (9th Cir. 1992).

A.   <u>The Five-Step Evaluation Process</u>

The ALJ follows a five-step sequential evaluation process in assessing whether a claimant is disabled.  20 C.F.R. § 404.1520(a)(4); <u>Lester v. Chater</u>, 81 F.3d 821, 828 n.5 (9th Cir. 1995) (as amended Apr. 9, 1996).  In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is

3

1   not disabled and the claim must be denied.  § 404.1520(a)(4)(i).

2   If the claimant is not engaged in substantial gainful activity,

3   the second step requires the Commissioner to determine whether

4   the claimant has a "severe" impairment or combination of

5   impairments significantly limiting his ability to do basic work

6   activities; if not, a finding of not disabled is made and the

7   claim must be denied.  § 404.1520(a)(4)(ii).  If the claimant has

8   a "severe" impairment or combination of impairments, the third

9   step requires the Commissioner to determine whether the

10  impairment or combination of impairments meets or equals an

11  impairment in the Listing of Impairments ("Listing") set forth at

12  20 C.F.R., Part 404, Subpart P, Appendix 1; if so, disability is

13  conclusively presumed and benefits are awarded.

14  § 404.1520(a)(4)(iii).

15      If the claimant's impairment or combination of impairments

16  does not meet or equal an impairment in the Listing, the fourth

17  step requires the Commissioner to determine whether the claimant

18  has sufficient residual functional capacity ("RFC")[1] to perform

19  his past work; if so, the claimant is not disabled and the claim

20  must be denied.  § 404.1520(a)(4)(iv).  The claimant has the

21  burden of proving he is unable to perform past relevant work.

22  Drouin, 966 F.2d at 1257.  If the claimant meets that burden, a

23  prima facie case of disability is established.  Id.  If that

24  happens or if the claimant has no past relevant work, the

25  Commissioner then bears the burden of establishing that the

26

27      [1]   RFC is what a claimant can do despite existing exertional
28  and nonexertional limitations.  § 404.1545; see Cooper v. Sullivan,
    880 F.2d 1152, 1155 n.5 (9th Cir. 1989).

4

1 claimant is not disabled because he can perform other substantial
2 gainful work available in the national economy.
3 § 404.1520(a)(4)(v).  That determination comprises the fifth and
4 final step in the sequential analysis.  § 404.1520; <u>Lester</u>, 81
5 F.3d at 828 n.5; <u>Drouin</u>, 966 F.2d at 1257.

6       B.   <u>The ALJ's Application of the Five-Step Process</u>

7       At step one, the ALJ found that Plaintiff had not engaged in
8 any substantial gainful activity since February 27, 2009.  (AR
9 22.)  At step two, the ALJ concluded that Plaintiff had severe
10 impairments of anxiety disorder, psychosis not otherwise
11 specified, and alcohol dependence.  (AR 23 (listing "conditions
12 of ill being").)  At step three, the ALJ determined that
13 Plaintiff's impairments did not meet or equal a Listing,
14 specifically including listings 12.04 and 12.06.  (AR 23-24.)  At
15 step four, the ALJ determined that Plaintiff retained the RFC to
16 perform a full range of work at all exertional levels but with
17 some nonexertional limitations.  Specifically, the ALJ found that
18       the claimant may not perform complex technical work but
19       may perform a full range of simple, routine, and
20       repetitive work, with frequent contact with supervisors
21       and the general public, at a stress level of three (3) on
22       a scale of one to ten, one (1) being, by example, the
23       work of a night dishwasher, and ten (10) being, by
24       example, the work of an air traffic controller as these
25       occupations are generally performed in the national
26       economy.
27 (AR 24.)  The ALJ found that Plaintiff was unable to perform his
28 past relevant work.  (AR 28.)  Based on the VE's responses to the

5

interrogatories, however, the ALJ concluded that Plaintiff could perform jobs existing in significant numbers in the national economy.  (AR 28-29.)   Thus, the ALJ found that Plaintiff was not disabled.  (AR 29.)

**V.    DISCUSSION**

Plaintiff argues that the ALJ erred in assessing the medical evidence and evaluating Plaintiff's credibility.  (J. Stip. at 3.)

A.    The ALJ Did Not Err in Assessing the Medical Evidence

Plaintiff asserts that the ALJ failed to properly assess the medical evidence, which allegedly showed that his severe depression and anxiety met Listing 12.04 and Listing 12.06.  (Id. at 3, 7.)

1.    Medical opinion evidence

Plaintiff contends that the ALJ gave too little weight to the opinions of his treating physicians and examining psychologist and too much weight to that of the state-agency physician.  (Id. at 3.)  He further contends that the ALJ erred in failing to consult a medical expert.  (Id. at 7.)

a.    *Applicable law*

Three types of physicians may offer opinions in Social Security cases: (1) those who directly treated the plaintiff, (2) those who examined but did not treat the plaintiff, and (3) those who did not treat or examine the plaintiff.  Lester, 81 F.3d at 830.  A treating physician's opinion is generally entitled to more weight than that of an examining physician, and an examining physician's opinion is generally entitled to more weight than that of a nonexamining physician.  Id.

6

1   This is true because treating physicians are employed to
2   cure and have a greater opportunity to know and observe the
3   claimant.  Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996).
4   If a treating physician's opinion is well supported by medically
5   acceptable clinical and laboratory diagnostic techniques and is
6   not inconsistent with the other substantial evidence in the
7   record, it should be given controlling weight.  § 404.1527(c)(2).
8   If a treating physician's opinion is not given controlling
9   weight, its weight is determined by length of the treatment
10  relationship, frequency of examination, nature and extent of the
11  treatment relationship, amount of evidence supporting the
12  opinion, consistency with the record as a whole, the doctor's
13  area of specialization, and other factors.  § 404.1527(c)(2)-(6).
14      When a treating or examining doctor's opinion is not
15  contradicted by some evidence in the record, it may be rejected
16  only for "clear and convincing" reasons.  See Carmickle v.
17  Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1164 (9th Cir. 2008)
18  (quoting Lester, 81 F.3d at 830-31).  When a treating or
19  examining physician's opinion is contradicted, the ALJ must
20  provide only "specific and legitimate reasons" for discounting
21  it.  Id.  The weight given an examining physician's opinion,
22  moreover, depends on whether it is consistent with the record and
23  accompanied by adequate explanation, among other things.
24  § 404.1527(c)(3)-(6).
25              b.  *Analysis*
26      Although Plaintiff contends that the ALJ "dismiss[ed]" the
27  opinions of his treating physicians (J. Stip. at 6), the ALJ in
28  fact relied upon their treatment notes in assessing Plaintiff's

mental-health impairments.  (See AR 25-26.)  The ALJ found that
those records reflected "brief periods of acute exacerbations of
[Plaintiff's] psychological and substance abuse symptoms,
interspersed with longer periods of higher functioning."  (AR
25.)  For instance, psychiatrist Dr. Aura-Marie Pawley initially
diagnosed major depressive disorder, "currently with psychotic
features," and panic disorder (AR 371), but she then treated
Plaintiff's depression, anxiety, and sleep issues conservatively,
with prescription medication and continued therapy (see AR 357,
366-67), even after an "alcohol binge" (AR 356).  As the ALJ
noted, when not drinking Plaintiff responded well to treatment.
(AR 25-26; see AR 356, 362.)  Plaintiff's subsequent prison
mental-health records similarly reflect that he found relief from
his insomnia and anxiety with medication.  (See AR 538 (noting
"meds help a little" with anxiety, Plaintiff sleeping better with
Benadryl), 540 (anxiety "stable on current meds"), 541 (Plaintiff
"stable on current med regimen, no adjustments necessary at this
time, meds reordered"), 555 (claimant "has been stable on meds"
and was "alert," "cooperative," "calm," and exhibiting "good"
concentration and eye contact).)  Indeed, psychiatrist Dr.
William Power found Plaintiff to be "very high functioning," with
"good social skills and cues" and "good judgment" even when his
medication was being adjusted to better address his symptoms.
(AR 540.)  In addition to noting evidence from Plaintiff's
treating physicians showing his capacity for stability, the ALJ
also relied on their findings in limiting Plaintiff to jobs with
a stress level of three or less.  (AR 27; see, e.g., AR 356
(describing Plaintiff's "chronic pattern" of responding poorly to

"frustrating encounters with his mother"), 365 (Pawley noting

discussion with Plaintiff regarding "environmental stressors").)

The ALJ did "dismiss" the findings of Plaintiff's treating

physicians to the extent they assessed his Global Assessment

Functioning ("GAF") score at given times.  (AR 26.)  As the ALJ

noted, the Commissioner has declined to endorse GAF scores, which

are subjective and provide "only snapshots of impaired and

improved behavior."  (Id.); Revised Medical Criteria for

Evaluating Mental Disorders and Traumatic Brain Injury, 65 Fed.

Reg. 50745, 50764-65 (Aug. 21, 2000) (GAF score "does not have a

direct correlation to the severity requirements in our mental

disorders listings"); cf. McFarland v. Astrue, 288 F. App'x 357,

359 (9th Cir. 2008) (finding ALJ's failure to address GAF scores

not error when RFC assessment accounted for claimant's mental

impairments, was not inconsistent with "three limited duration

GAF scores," and was supported by substantial evidence).  Indeed,

the most recent edition of the DSM "dropped" the GAF scale,

citing its lack of conceptual clarity and questionable

psychological measurements in practice.  Am. Psychiatric Ass'n,

Diagnostic and Statistical Manual of Mental Disorders 16 (5th ed.

2013).

Contrary to Plaintiff's contention (J. Stip. at 6), the ALJ

provided specific and legitimate reasons for giving "less weight"

to the findings of Gail Schuler, a psychologist who evaluated him

at the request of counsel.  (See AR 26-27.)  The ALJ noted that

Dr. Schuler's opinion that Plaintiff was "totally psychiatrically

disabled" concerned an issue reserved to the Commissioner (AR

27); the ALJ was not, therefore, bound to accept her statement,

9

see § 404.1527(d)(1) (determination of disability is reserved to Commissioner); SSR 96-5p, 1996 WL 374183, at *2 (July 2, 1996) (noting that although ALJ must carefully consider medical-source opinions about issues reserved to the Commissioner, "treating source opinions on issues that are reserved to the Commissioner are never entitled to controlling weight or special significance").

The ALJ further found that Dr. Schuler's opinion was not supported by her clinical findings. The ALJ noted Dr. Schuler's findings that Plaintiff was carelessly groomed, with a blunt and dysphoric affect, but cognitively intact, with little difficulty with memory and no evidence of hallucinations or delusions. (AR 26; see AR 564.) She assessed a full-scale IQ score of 97, placing Plaintiff "in the Average range of functioning." (AR 566.) Yet despite these "relatively mild findings," Dr. Schuler assessed Plaintiff with a GAF score that indicated "a complete inability to function." (AR 26.) Such inconsistency provided a basis for the ALJ to reject Dr. Schuler's opinion. See Matney ex rel. Matney v. Sullivan, 981 F.2d 1016, 1020 (9th Cir. 1992) ("inconsistencies and ambiguities" in doctor's opinion were specific and legitimate reasons for rejecting it); see also Connett v. Barnhart, 340 F.3d 871, 875 (9th Cir. 2003) (doctor's opinion properly rejected when treatment notes "provide no basis for the functional restrictions he opined should be imposed on [claimant]").

The ALJ also noted that Dr. Schuler's findings "relied quite heavily" on Plaintiff's subjective report of symptoms and limitations and "seemed to accept uncritically as true, most if

not all, of what the claimant reported." (AR 27; see AR 559-64.)
That alone is a basis to reject her opinion, particularly, as
here, when the ALJ found that "there exist good reasons for
questioning the reliability of claimant's subjective complaints"
(AR 27; see infra Section V.B); Fair v. Bowen, 885 F.2d 597, 605
(9th Cir. 1989) (finding ALJ properly disregarded physician's
opinion when premised on claimant's subjective complaints, which
ALJ had already discounted); Evans v. Comm'r of Soc. Sec. Admin.,
320 F. App'x 593, 597 (9th Cir. 2009) ("An ALJ may appropriately
reject a physician's opinion that is based on a claimant's
non-credible subjective complaints.").

     Plaintiff contends that the ALJ erred in crediting the
opinion of state-agency physician Dr. R.E. Brooks over that of
examining physician Dr. Schuler. (J. Stip. at 3.) An ALJ,
however, "may reject the testimony of an examining, but
non-treating physician, in favor of a nonexamining, nontreating
physician when he gives specific, legitimate reasons for doing
so, and those reasons are supported by substantial record
evidence." Roberts v. Shalala, 66 F.3d 179, 184 (9th Cir. 1995);
SSR 96-6P, 1996 WL 374180, at *2 (July 2, 1996) (state-agency
physicians are highly qualified and expert in evaluation of
medical issues under the Act). Here the ALJ properly rejected
Dr. Schuler's findings in favor of those of Dr. Brooks, whose
assessment the ALJ found largely consistent with the record. (AR
27); cf. Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1227-
28 (9th Cir. 2009) (upholding RFC determination when ALJ relied
on state-agency physician's opinion over that of treating
physician). Further, to the extent the ALJ found Dr. Brooks's

11

1  opinion to diverge from those of Plaintiff's treating doctors,
2  the ALJ imposed additional restrictions commensurate with the
3  limitations assessed by the treating physicians. (AR 27 (noting
4  that evidence "support[s] additionally limiting the claimant to
5  work at a stress level of three or less, based on the
6  documentation from the psychiatrists who treated the claimant").)

7      Plaintiff's contention that Dr. Brooks provided "nothing to
8  corroborate his one-sentence opinion" (J. Stip. at 4 (citing AR
9  437-39)) ignores the doctor's Psychiatric Review Technique, in
10 which he assessed Plaintiff's alleged impairments and limitations
11 (AR 484-93) and summarized the medical evidence upon which that
12 assessment was based (AR 494).  See § 404.1527(c)(3)-(4) (greater
13 weight given physician's opinion that is consistent with record
14 and accompanied by adequate explanation).  Although Plaintiff
15 contends that Dr. Brooks left the Mental Residual Functional
16 Capacity Assessment form "nearly entirely blank" (J. Stip. at 4),
17 more careful examination of the poor reproduction of that
18 document in the record reveals marks indicating that Plaintiff
19 was either not significantly limited or moderately limited in
20 each of the activities on the form (AR 437-38).  The only
21 portions of the Psychiatric Review Technique form Dr. Brooks left
22 blank were those that related to conditions Plaintiff did not
23 have, such as psychosis and mental retardation. (See, e.g., AR
24 485-87.)  Because the ALJ found that Dr. Brooks's opinion (see AR
25 439) was generally consistent with the record, the ALJ was
26 entitled to rely upon it.  See Thomas v. Barnhart, 278 F.3d 947,
27 957 (9th Cir. 2002) ("The opinions of non-treating or
28 non-examining physicians may also serve as substantial evidence

12

when the opinions are consistent with independent clinical

findings or other evidence in the record.").[2]

Remand is not warranted on this basis.

2.  Treatment records

Plaintiff further contends that the ALJ erred in his

evaluation of the medical evidence because he "selectively cited

treatment notes from dates when [Plaintiff] had brief periods of

improvement." (J. Stip. at 4 (citing AR 356, 362).)  The ALJ was

not obligated to address every piece of evidence, Howard ex rel.

Wolff v. Barnhart, 341 F.3d 1006, 1012 (9th Cir. 2003), and in

any event Plaintiff does not point to any significant medical

evidence that the ALJ overlooked or ignored.

Plaintiff contends that the ALJ ignored evidence that

Plaintiff's "emotional condition" is "tumultuous" (J. Stip. at

4), but in fact the ALJ noted the "brief periods of acute

exacerbations of his . . . symptoms" (AR 25).  He nonetheless

found that Plaintiff's medical records reflected his improvement

with medication when not drinking.  (AR 25-26; see AR 356

_____

[2]    Although  Plaintiff  contends  –  without  citing  any
authority – that the ALJ had a duty to consult a medical expert "to
clarify any discrepancies in the record" (J. Stip. at 7), an ALJ's
duty  to  further  develop  the  record  is  triggered  only  when  the
record  contains  ambiguous  evidence  or  is  inadequate  to  allow  for
proper  evaluation  of  the  evidence,  Mayes v. Massanari,  276  F.3d
453,  459-60  (9th Cir. 2001).   Here,  the  evidence  was  not  ambiguous
and  the  record  was  not  inadequate.   As  noted,  the  ALJ  reasonably
assessed  Plaintiff's  treatment  records  and  the  opinions  of  his
medical  practitioners  in  determining  that  he  did  not  suffer  from  a
disabling  mental  impairment.   Moreover,  insofar  as  Plaintiff
contends  that  a  medical  expert  would  have  found  listing-level
mental-health  impairments,  it  is  worth  noting  that  only  Dr. Schuler
– not any of Plaintiff's treating doctors – opined that Plaintiff
suffered  marked  impairments,  and  as  noted  her  opinion  was
reasonably afforded little weight.

(Plaintiff reporting to Dr. Pawley that, other than during his "binge," his "mood has overall been stable" and "he has been doing very well"), 362 (reporting "doing very well," "good and stable" "mood," and no "depression, mood fluctuation, anger, irritability, or anxiety"), 538 (after one month on medication, reporting still anxious but better with medication, some panic attacks with auditory hallucinations at night, depressed but not hopeless or suicidal, and sleeping better with Benadryl), 539 (after two months, reporting anxiety but only occasional auditory hallucinations and no other psychotic symptoms, feeling "a little down" but not hopeless or worthless, with "fair" appetite and sleep), 540 (noting Plaintiff's anxiety disorder "stable on current meds" but adjusting medications to better control symptoms), 541 (reporting Plaintiff "stable on current med regimen, no adjustments necessary at this time").)[3]

In particular, the ALJ found that Plaintiff's hospitalizations were "precipitated by interpersonal conflicts and alcohol intoxication." (AR 25.) The ALJ accounted for the brief hospitalizations documented in the record in assessing whether Plaintiff met paragraph B and C criteria for any of three mental-health listings. (AR 24; see infra Section V.A.3.)[4]

_____

[3]   Plaintiff points to a prison treatment note showing that he had auditory hallucinations even when sober. (J. Stip. at 6 (citing AR 552).) But as noted, most of the prison treatment notes showed Plaintiff doing well. (See, e.g., AR 538, 540, 541, 555.) This one note, then, only serves to confirm the ALJ's finding that Plaintiff had "brief periods" of "exacerbation[]." (AR 25.)

[4]   Although Plaintiff emphasizes that he was once hospitalized for a week and reports that he was then treated for "severe depression" (J. Stip. at 5 (citing AR 369)), the

14

1     Plaintiff does not challenge the ALJ's findings that he has

2   been sober since January 2010, his alcohol abuse was not severe

3   enough to meet a Listing, and it was "not a factor material to

4   the determination of his disability." (AR 23; see AR 59-60

5   (Plaintiff testifying that he had completed 12-step program and

6   no longer desired alcohol).)[5] Rather, he contends that his

7   mental-health impairments continued when he became sober. (J.

8   Stip. at 5.) Plaintiff stresses evidence that his mental-health

9   impairments required medication that did not eliminate his

10  symptoms and caused some side effects. (J. Stip. at 5-6.)

11  However, as noted above, treatment records show that Plaintiff's

12  mental-health impairments improved with medication. Plaintiff

13  himself acknowledged that he had gotten better with treatment and

14  since becoming sober. (See, e.g., AR 58 (Plaintiff discussing

15  "new clients" who remind him of "where [he] was"), 164 (Plaintiff

16  acknowledging in March 2010 that when he first was ill he "wasn't

17

18  hospitalization to which he refers was for three days, not a week
    (AR 373). Similarly, the record does not support Plaintiff's
19  contention that his "psychiatrist recommended hospitalization due
    to depression and alcohol use." (J. Stip. at 5 (citing AR
20  356-61).) Rather, Plaintiff reported that he was "doing badly" and
    was advised by the on-call psychiatrist to report to a hospital "to
21  be evaluated" because of his earlier reports of attempted suicide.
    (AR 360-61.) Once at the hospital, Plaintiff refused treatment.
22  (AR 360.)

23

24      [5]   A claimant whose alcohol abuse is a contributing factor
    material to a determination of disability is not entitled to
25  benefits. See 42 U.S.C. § 423(d)(2)(C); Ball v. Massanari, 254
    F.3d 817, 821, 824 (9th Cir. 2001). The Social Security
26  regulations provide that "[t]he key factor we will examine in
    determining whether drug addiction or alcoholism is a contributing
27  factor material to the determination of disability is whether we
    would still find you disabled if you stopped using drugs or
28  alcohol." 20 C.F.R. § 404.1535(b)(1).

cooking or eating much at all" but now "cook[s] as much as" he
can, making three meals daily).)  Impairments that can be
effectively treated with medication, even if they are not cured,
are not disabling for purposes of Social Security benefits.
Warre v. Comm'r Soc. Sec. Admin., 439 F.3d 1001, 1006 (9th Cir.
2006); see also § 404.1529(c)(3)(iv)-(v) (ALJ may consider
effectiveness of medication and treatment in evaluating severity
and limiting effects of impairment).

When, as here, the evidence reasonably supports the ALJ's
findings, reversal is not warranted.  Reddick, 157 F.3d at 720-
21.

3.  Listing 12.04 and Listing 12.06

Plaintiff argues that the ALJ erred in finding that his
severe depression and anxiety did not meet or equal Listing 12.04
(affective disorders) or Listing 12.06 (anxiety-related
disorders).  (J. Stip. at 3); see 20 C.F.R., subpt. P, app. 1
§§ 12.04, 12.06.  Reversal is not warranted on this basis.

a.  *Applicable law*

At step three of the sequential evaluation process, the ALJ
must evaluate the claimant's impairments to see if they meet or
medically equal any of those in the Listings.  See § 404.1520(d);
Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999).  Listed
impairments are those that are "so severe that they are
irrebuttably presumed disabling, without any specific finding as
to the claimant's ability to perform his past relevant work or
any other jobs."  Lester, 81 F.3d at 828.

The claimant has the initial burden of proving that an
impairment meets or equals a Listing.  See Sullivan v. Zebley,

16

493 U.S. 521, 530-33, 110 S. Ct. 885, 891-92, 107 L. Ed. 2d 967 (1990).  "To *meet* a listed impairment, a claimant must establish that he or she meets each characteristic of a listed impairment relevant to his or her claim."  Tackett, 180 F.3d at 1099.  "To *equal* a listed impairment, a claimant must establish symptoms, signs and laboratory findings 'at least equal in severity and duration' to the characteristics of a relevant listed impairment, or, if a claimant's impairment is not listed, then to the listed impairment 'most like' the claimant's impairment."  Id. (citing § 404.1526).  Medical equivalence, moreover, "must be based on medical findings"; "[a] generalized assertion of functional problems is not enough to establish disability at step three."  Id. at 1100 (citing § 404.1526).

An ALJ "must evaluate the relevant evidence before concluding that a claimant's impairments do not meet or equal a listed impairment."  Lewis v. Apfel, 236 F.3d 503, 512 (9th Cir. 2001).  The ALJ need not, however, "state why a claimant failed to satisfy every different section of the listing of impairments."  Gonzalez v. Sullivan, 914 F.2d 1197, 1201 (9th Cir. 1990) (finding that ALJ did not err in failing to state what evidence supported conclusion that, or discuss why, claimant's impairments did not satisfy Listing).  Moreover, the ALJ "is not required to discuss the combined effects of a claimant's impairments or compare them to any listing in an equivalency determination, unless the claimant presents evidence in an effort to establish equivalence."  Burch v. Barnhart, 400 F.3d 676, 683 (9th Cir. 2005) (citing Lewis, 236 F.3d at 514).

An ALJ's decision that a plaintiff did not meet a Listing

17

1  must be upheld if it was supported by "substantial evidence."

2  See Warre, 439 F.3d at 1006.  Substantial evidence is "more than

3  a mere scintilla but less than a preponderance; it is such

4  relevant evidence as a reasonable mind might accept as adequate

5  to support a conclusion."  Sandgathe v. Chater, 108 F.3d 978, 980

6  (9th Cir. 1997) (internal quotation marks omitted).  When

7  evidence is susceptible to more than one rational interpretation,

8  the Court must uphold the ALJ's conclusion as long as substantial

9  evidence supported it.  Id.

10              b.  *Analysis*

11       In order to meet either Listing 12.04 or Listing 12.06, a

12  claimant must not only provide medically documented findings of

13  specified signs and symptoms but must also satisfy the criteria

14  in either Paragraph B or Paragraph C of the applicable Listing.

15  See 20 C.F.R., subpt. P, app. 1 §§ 12.04, 12.06.  Plaintiff

16  challenges only the finding that he failed to satisfy Paragraph B

17  of either Listing, which requires that Plaintiff's symptoms

18  result in at least two of the following: (1) marked restriction

19  of activities of daily living; (2) marked difficulties in

20  maintaining social functioning; (3) marked difficulties in

21  maintaining concentration, persistence, or pace; or (4) repeated

22  episodes of decompensation, each of extended duration.[6]  Id.

23

24       [6]    The term "repeated episodes of decompensation, each of

25  extended duration," means "three episodes within 1 year, or an
    average of once every 4 months, each lasting for at least 2 weeks."

26  20 C.F.R. 404, subpt. P, app. 1 § 12.00(C)(4).  If a claimant has
    "experienced more frequent episodes of shorter duration or less

27  frequent episodes of longer duration," the ALJ "must use judgment
    to determine if the duration and functional effects of the episodes

28  are of equal severity and may be used to substitute for the listed

                              18

§§ 12.04(B), 12.06(B).

The ALJ found that Plaintiff had only mild restrictions in activities of daily living, noting that although he alleged little interest in those activities (see AR 163, 164), no evidence showed that he required assistance to complete them (AR 23).   The ALJ found that Plaintiff suffered moderate limitations in social functioning, noting that he alleged he does not spend time with others but testified that he attends church and group meetings regularly for alcohol recovery.   (Id.)   The ALJ found Plaintiff had moderate difficulties with concentration, persistence, or pace.   (AR 24.)   The ALJ noted Plaintiff's alleged problems with memory and concentration but also his ability to prepare meals, clean, do laundry, watch television, organize his CD collection, and care for a pet.   (AR 24; see AR 162-66 (noting activities), 362 (Plaintiff reporting his plan to take online coursework).)   The ALJ found that Plaintiff had experienced no episodes of decompensation of extended duration, noting that his emergency-room visits were generally resolved within a few hours and that he was discharged after each of two hospitalizations in a couple of days.   (AR 24; see AR 259-61, 285-87, 301-03, 310-34.)

Although Plaintiff points to the assessment of Dr. Schuler that he was markedly limited in social functioning and maintaining concentration and persistence (J. Stip. at 21-22; see AR 572), as explained above, the ALJ reasonably accorded her opinion little weight because it was inconsistent with her

finding in a determination of equivalence."   Id.

19

clinical findings, depended largely on Plaintiff's subjective
report of his symptoms and limitations, and was inconsistent with
other evidence of record (AR 27).  To the extent Plaintiff argues
that Dr. Schuler's finding of listing-level impairments is
supported by medical evidence of his continued symptoms (see J.
Stip. at 21), as explained above, the ALJ reasonably found that
Plaintiff's impairments improved with treatment and avoidance of
alcohol.  That he requires continued treatment does not establish
a disabling – let alone presumptively disabling – impairment.

Notably, none of the other physicians, including those who
treated Plaintiff, opined that he suffered listing-level mental-
health impairments.  Rather, Dr. Power found Plaintiff to be
"very high functioning," with "good social skills and cues" and
"good judgment," even when his medication was being adjusted to
better address his symptoms.  (AR 540; see also AR 555 (finding
claimant to be "alert," "cooperative," "calm," and possessed of
"good" concentration and eye contact).)

Plaintiff challenges the ALJ's reliance on his ability to
manage his finances, organize his belongings, watch TV, and care
for his personal needs, arguing that many such activities are not
transferrable to the workplace.  (J. Stip. at 19.)  Plaintiff
himself stated that he regularly does these activities and also
prepares daily meals, cleans house, goes out alone, takes public
transit, shops, cares for a dog, and attends church and group
meetings.  (AR 162-66.)  Moreover, while incarcerated Plaintiff
worked as a trustee.  (AR 541.)  The ALJ reasonably found that
such activities demanded functions similar to those required by
fulltime employment.  Cf. Molina v. Astrue, 674 F.3d 1104, 1113

20

1  (9th Cir. 2012) (holding that activities such as walking
2  grandchildren to and from school, attending church, shopping, and
3  taking walks undermined claimant's claims of inability to be
4  around people without suffering debilitating panic attacks);
5  Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 600 (9th Cir.
6  1999) (finding ability to fix meals, do laundry, do yardwork, and
7  occasionally care for friend's child evidence of ability to
8  work).  Although Plaintiff alleges some difficulty performing
9  these activities, his allegations do not suggest a listing-level
10  impairment.  See Molina, 674 F.3d at 1113 ("Even where those
11  activities suggest some difficulty functioning, they may be
12  grounds for discrediting the claimant's testimony to the extent
13  that they contradict claims of a totally debilitating
14  impairment.").[7]

15  Plaintiff has not met his burden of demonstrating that he
16  meets or equals the criteria of the listings.  Reversal is not
17  warranted on this basis.

18  B.  The ALJ Did Not Err in Assessing Plaintiff's
19      Credibility

20      1.  Applicable law

21  An ALJ's assessment of pain severity and claimant
22  credibility is entitled to "great weight."  See Weetman v.
23  Sullivan, 877 F.2d 20, 22 (9th Cir. 1989); Nyman v. Heckler, 779
24  F.2d 528, 531 (9th Cir. 1986).  "[T]he ALJ is not required to
25
26
27  [7]  The Court does not address Plaintiff's arguments
    regarding Defendant's alleged mischaracterization of the evidence,
28  which have no bearing on the reasonableness of the ALJ's findings.
    (See J. Stip. at 18-19.)

1  believe every allegation of disabling pain, or else disability
2  benefits would be available for the asking, a result plainly
3  contrary to 42 U.S.C. § 423(d)(5)(A)."  Molina, 674 F.3d at 1112
4  (internal quotation marks omitted).

5       In evaluating a claimant's subjective symptom testimony, the
6  ALJ engages in a two-step analysis.  See Lingenfelter, 504 F.3d
7  at 1035-36.  "First, the ALJ must determine whether the claimant
8  has presented objective medical evidence of an underlying
9  impairment [that] could reasonably be expected to produce the
10 pain or other symptoms alleged."  Id. at 1036 (internal quotation
11 marks omitted).  If such objective medical evidence exists, the
12 ALJ may not reject a claimant's testimony "simply because there
13 is no showing that the impairment can reasonably produce the
14 degree of symptom alleged."  Smolen, 80 F.3d at 1282 (emphasis in
15 original).  When the ALJ finds a claimant's subjective complaints
16 not credible, the ALJ must make specific findings that support
17 the conclusion.  See Berry v. Astrue, 622 F.3d 1228, 1234 (9th
18 Cir. 2010).

19      Absent affirmative evidence of malingering, those findings
20 must provide "clear and convincing" reasons for rejecting the
21 claimant's testimony.  Lester, 81 F.3d at 834.  If the ALJ's
22 credibility finding is supported by substantial evidence in the
23 record, the reviewing court "may not engage in second-guessing."
24 Thomas, 278 F.3d at 959.

25           2.  Analysis

26      Plaintiff contends that the ALJ failed to provide specific,
27 clear and convincing reasons for finding his statements not fully
28 credible.  (J. Stip. at 22; see AR 25.)  In fact, the ALJ cited

22

several specific reasons for finding Plaintiff's statements
regarding the intensity, persistence, and limiting effects of his
symptoms not credible, including his treatment record, the
effectiveness of that treatment, medical opinions, his regular
activities, and inconsistencies between all of these and
Plaintiff's claims of disabling impairments.  (See AR 23-27.)  As
noted above, the ALJ found that although Plaintiff's treatment
records reflected periods of acute exacerbation of his
psychological and substance-abuse symptoms, he was generally
stable and "higher functioning."  (AR 25); see Parra, 481 F.3d at
750 (holding that inconsistencies between medical evidence and
claimant's subjective complaints constitute significant and
substantial reasons to discount his credibility).  Both his
treatment records and his own statements confirm that he improved
with conservative treatment.  (AR 25-26; see AR 58, 164, 356,
362, 540, 541); see Tommasetti v. Astrue, 533 F.3d 1035, 1040
(9th Cir. 2008) (holding that claimant's response to conservative
treatment undermined his reports of disabling symptoms).  The ALJ
also found that the opinions of Plaintiff's treating physicians
and Dr. Brooks supported a finding that Plaintiff was capable of
simple, repetitive work with a limited stress level.  (AR 27; see
AR 24); cf. Carmickle 533 F.3d at 1161 (contradiction with
medical record is sufficient basis for rejecting claimant's
subjective testimony).  The ALJ found that Plaintiff's own
statements reflected his capacity for varied activities.  (AR
26); see § 404.1529(c)(3)(i); Light v. Soc. Sec. Admin., 119 F.3d
789, 792 (9th Cir. 1997) (in weighing claimant's credibility, ALJ
may consider inconsistencies between testimony and conduct).  The

ALJ thus found that the medical evidence and Plaintiff's reports of his regular activities contradicted his allegations of disabling symptoms.  (AR 26); cf. Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001) (ALJ properly discounted symptom testimony that was inconsistent with both medical evidence and claimant's daily activities).

To the extent Plaintiff suggests that his statements must be viewed differently because he was living in a sober-living home at the time of the hearing, most of the statements about his activities predate his residence there.  (See AR 52 (testifying he had lived in the facility since August 2010), AR 162-66 (on March 2, 2010, noting activities).)  Moreover, although Plaintiff consistently argues that the record evidence paints a picture of a person debilitated by depression and anxiety, as noted above, the ALJ reasonably found that Plaintiff's treatment records show medical improvement and increased functionality with treatment. (See, e.g., AR 362 (planning to enroll in online courses), 540 (exhibiting good judgment), 541 (working as trustee), 555 (exhibiting good concentration).)  As Plaintiff himself notes (J. Stip. at 23), the ALJ may not speculate about possible changed circumstances in the future but must base his assessment of Plaintiff's limitations on the evidence of record.

On appellate review, this Court is limited to determining whether the ALJ properly identified clear and convincing reasons for discrediting Plaintiff's credibility.  Smolen, 80 F.3d at 1284.  Plaintiff's general stability and high functioning, the improvement of his symptoms with treatment, the assessments of his treating physicians and the state-agency physician, and his

24

varied activities are proper and sufficiently specific bases for discounting his claims of disabling symptoms, and the ALJ's reasoning was clear and convincing.  See Tommasetti, 533 F.3d at 1039-40; Houghton v. Comm'r Soc. Sec. Admin., 493 F. App'x 843, 845 (9th Cir. 2012).  Because the ALJ's findings were supported by substantial evidence, this Court may not engage in second-guessing.  See Thomas, 278 F.3d at 959; Fair, 885 F.2d at 604.  Remand is not warranted.

**VI.  CONCLUSION**

Consistent with the foregoing, and pursuant to sentence four of 42 U.S.C. § 405(g),[8] IT IS ORDERED that judgment be entered AFFIRMING the decision of the Commissioner and dismissing this action with prejudice.  IT IS FURTHER ORDERED that the Clerk serve copies of this Order and the Judgment on counsel for both parties.

DATED: May 29, 2014      _____
                          JEAN ROSENBLUTH
                          U.S. Magistrate Judge

---

    [8]    This sentence provides: "The [district] court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."